**IT IS ORDERED as set forth below:**



Date: May 15, 2017

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | CASE NO. 16-57731-WLH |
| ) | |
| RANDLE MORT CONKLIN, ) | CHAPTER 7 |
| ) | |
| Debtor. ) | JUDGE WENDY HAGENAU |
| ) | |
| ) | |
| KARI HALDORSON, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | ADV. PROC. NO. 16-5201 |
| ) | |
| RANDLE MORT CONKLIN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER AFTER TRIAL

This Complaint to Determine Dischargeability and Motion for Relief from Stay related to a settlement agreement incorporated into a final divorce decree came before the Court for trial, after notice, on April 4, 2017. David J. Casey appeared on behalf of the Plaintiff, and Edward F. Danowitz appeared on behalf of the Debtor. This Court has jurisdiction of this matter pursuant

1

to 28 U.S.C. §§ 157 and 1334 because the Complaint involves the dischargeability of a debt and relief from the automatic stay, and the matters are core under 28 U.S.C. § 157(b)(2)(G) and (I). At the conclusion of the trial, the court announced its oral ruling which is incorporated herein.

## FINDINGS OF FACT

Plaintiff and Defendant were married for many years, and each operated several small businesses. In December 2013, however, the parties were divorced pursuant to a Final Judgment and Decree of Divorce entered December 11, 2013 ("Final Judgment"). This Final Judgment incorporated a settlement agreement between the parties dated December 3, 2013 ("Settlement Agreement"). Particularly applicable to this proceeding are paragraphs 10 and 12 of the Settlement Agreement.

Paragraph 10 is entitled "Equitable Division – Business Interests". Subparagraph (a) provides as follows:

> Husband shall have, free and clear of any further claim or interest of Wife or her estate, a certain business known as Salon & Spa Group, LLC. Wife hereby transfers to Husband all of her stock and other interest, if any, in Salon and Spa. … Salon & Spa Group, LLC shall be solely responsible for all expenses attributable to Salon and Spa, and all liabilities, however titled, except as specifically provided herein, and Husband in his capacity as President of Salon & Spa Group, LLC shall indemnify and hold Wife harmless for any and all liability whatsoever arising from the operation of this business, any advice or work Wife offered or performed on behalf of Salon & Spa Group, LLC and any debts and obligations of any nature, which debts and obligations were incurred or may be incurred in connection with the operation or financing of this business. The parties agree and acknowledge that they each have credit card debt in their own personal names that were used for business expenses. Husband agrees that Wife loaned Salon & Spa Group, LLC the sum of $50,000. Unless and until Salon & Spa Group, LLC goes bankrupt or is sold, Salon & Spa Group, LLC agrees to repay Wife this loan at the rate of $100 per month until such time as the loan is paid in full. Unless and until Salon & Spa Group, LLC goes bankrupt or is sold, without earning enough to cover the liabilities, Salon & Spa Group, LLC shall be responsible for making timely payments on any and all credit cards in the parties' individual names that were used for business expenses, including an American Express card in the amount of $24,428 in Wife's name and a Bank of America card in the amount of $17,233 in Wife's name. In the event said credit card

2

> accounts are personally held by Wife or Husband and are still in existence at the time of a sale or bankruptcy, each party shall be solely responsible for the credit card debt in his or her own name and shall hold harmless and indemnify the other party with respect to this debt.

The Debtor specifically recalled the negotiation of this paragraph and his refusal to be obligated personally to the Plaintiff for the identified expenses.

Subparagraphs (b) through (g) of Paragraph 10 address the division of interest and responsibility of payment with respect to each of the other businesses in which either of the parties held an interest. In every other subparagraph, the language is similar to that in Subparagraph (a), except that, where Subparagraph (a) specifies that Salon & Spa Group, LLC shall be solely responsible for all expenses, the remaining subparagraphs designate either the husband or the wife as solely responsible for all expenses. None of the other subparagraphs refers to specific debts, and none of the other subparagraphs provides for the payment of specific debts.

Paragraph 12 of the Settlement Agreement is entitled "Equitable Division – Retirement Accounts". This paragraph states that only one retirement plan exists in which the parties have an interest. It states, "The approximate balance of the account is $13,700 as of August 26, 2013. Husband may retain this account in its entirety."

After the divorce, Salon & Spa Group, LLC continued to operate until March 2016. It had gross receipts of $2,122,513 in 2014 and $1,883,936 in 2015. Salon & Spa Group, LLC made the payments required under Paragraph 10 of the Settlement Agreement until it ceased operations. It paid $100 per month on the $50,000 loan, and paid varying amounts on the Plaintiff's American Express and Bank of America credit card debts. Although Salon & Spa is no longer operating, the company was not sold, has not filed bankruptcy, and has not been dissolved.

On May 2, 2016, the Debtor husband filed this Chapter 7 bankruptcy petition. The Plaintiff ex-wife was scheduled as a creditor and received notice of the Section 341 meeting and of the deadlines for filing complaints to object to the Debtor's discharge or dischargeability of certain debts. The Debtor's Schedule B Statement of Property reflects an interest in an IRA with a balance of $221,000.

The Debtor's interest in the IRA is actually an interest in two separate self-directed IRAs. The self-directed IRAs were funded with monies from the Debtor's prior 401(k). The Debtor's IRAs own 100% of two businesses known as "CJ & Nikki's" and "CANI". One of the Debtor's IRAs paid $375,000 for 100% interest in CJ & Nikki's in 2008, and the other IRA paid $100,000 for 100% ownership in CANI in 2008. CJ & Nikki's and CANI then used the funds for the couples' other businesses. The Debtor's IRAs at the time the Settlement Agreement was executed and at the time the petition was filed consisted of a small amount of cash and a designation made by the Debtor as to the value of the IRAs' interests in the two companies. The amount of cash available in the two IRAs at the time of the execution of the Settlement Agreement was approximately $13,000, although the value of the two businesses as assigned by the Debtor as of March 31, 2013 (prior to the execution of the Settlement Agreement) was over $400,000. The Debtor took no funds out of the IRAs other than the amounts used to purchase the two companies and received no monies from the IRAs. The cash balances in the IRAs dwindled over time as fees were paid from the balances. Under the terms of the Settlement Agreement, the Debtor was granted a free and clear interest of all of the businesses known as CANI and CJ & Nikki's and the Plaintiff wife transferred and released to the Debtor all interest she had in those businesses.

4

On August 5, 2016, Ms. Haldorson filed a Motion for Relief from the Automatic Stay to proceed in state court to determine "Movant's value of the IRA". On August 24, 2016, Ms. Haldorson filed this Complaint to Determine Dischargeability. The Debtor received a discharge in this case on November 1, 2016.

## CONCLUSIONS OF LAW

Plaintiff's Complaint alleges that certain debt should be deemed non-dischargeable under 11 U.S.C. § 523(a)(3). This section provides that a debt is not discharged if it was neither listed nor scheduled in time to permit the creditor to file a proof of claim or to object to discharge under 11 U.S.C. § 523(a)(2), (4) and (6). Although the Complaint references Section 523(a)(3), no specific allegations were addressed to it and no evidence or argument was presented on the point at the trial. Moreover, the Court notes the Plaintiff, Ms. Haldorson, was scheduled as a creditor and received notice of the filing of the bankruptcy case and the relevant time periods. Judgment is therefore for the Debtor on Plaintiff's claims under Section 523(a)(3).

Next, the Complaint alleges a debt should be non-dischargeable under 11 U.S.C. § 523(a)(6). This section makes a debt non-dischargeable if it was "for willful and malicious injury by the debtor to another entity or to the property of another entity." The Complaint includes no specific allegations with regard to Section 523(a)(6) and the issues of Section 523(a)(6) were not presented at the trial either through argument or evidence. Judgment is therefore rendered for the Debtor with respect to any claim under Section 523(a)(6).

The remainder of Plaintiff's Complaint seeks to have the total Settlement Agreement deemed non-dischargeable. Section 523(a)(5) of the Bankruptcy Code makes a claim for a domestic support obligation non-dischargeable in a Chapter 7 case. The term "domestic support obligation" is defined in 11 U.S.C. § 101(14A) to mean "a debt that accrues before, on, or after

5

the date of the order for relief in a case under this title … that is … owed to or recoverable by … a spouse, former spouse or child of the debtor … in the nature of alimony, maintenance or support …; established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of … a separation agreement, divorce decree or property settlement agreement; … an order of a court of record; or … a determination made in accordance with applicable non-bankruptcy law by a governmental unit …".  Section 523(a)(15) makes non-dischargeable in a Chapter 7 case a debt owed to a spouse, former spouse or child which is not a domestic support obligation but "that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record …".  In each instance, the court addresses a specific debt to determine if it is non-dischargeable under the applicable provisions.  It is inappropriate for the court to "deem" an entire agreement to be non-dischargeable; rather, the plaintiff must allege specific debts that arise under the agreement that the plaintiff contends are non-dischargeable.  In this case, the parties stipulated at the trial that the specific debts allegedly arising under Paragraph 10 of the Settlement Agreement are not domestic support obligations as defined in the Bankruptcy Code and not included in Section 523(a)(5).  So, the specific question addressed by the Court is whether obligations of the Debtor arise under Paragraph 10 of the Settlement Agreement that are non-dischargeable under 11 U.S.C. § 523(a)(15).

Specifically, the Debtor contends he has no personal liability to the Plaintiff for the repayment of the $50,000 loan or her American Express or Bank of America credit cards that are identified in Paragraph 10 of the Settlement Agreement.  The Debtor argues the obligation is only that of Salon & Spa Group, LLC.  The Plaintiff contends the obligation is that of the Debtor personally because he is the signatory to the Settlement Agreement.  Plaintiff contends the

provision requiring Salon & Spa to make payments to the Plaintiff would be unenforceable under the statute of frauds.

This matter requires the Court to construe Paragraph 10 of the Settlement Agreement. "The cardinal rule of contract construction is to ascertain the intention of the parties. Contract construction is a three step process. Initially, the construction of the contract is a question of law for the court." Tillman Park v. Dabbs-Williams Gen. Contractors, 298 Ga. App. 27, 29 (2009).

> First, the court determines whether the contract is ambiguous. … A contract is ambiguous when the language used may be fairly understood in more ways than one. … If the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the trial court enforces the contract according to its literal meaning. … Second, if the trial court determines that the contract is ambiguous, "the trial court then applies the applicable rules of contract construction O.C.G.A. § 13-2-2 … In construing a contract, courts must give words their usual and common meaning. And the entirety of the agreement should be looked to in arriving at the construction of any part. The contract is to be considered as a whole, and each provision is to be given effect and interpreted so as to harmonize with the others." … Third, if an ambiguity in the contract cannot be negated by the court's application of the statutory rules of construction, a question of fact remains for the jury, which may consider parole evidence.

(cites omitted). SouthPoint Retail Partners, LLC v. North America Properties Atlanta, Ltd., 304 Ga. App. 419, 421-22 (2010).

The language of Paragraph 10 is ambiguous and can be understood in more than one way. Thus, the Court must apply the applicable rules of contract construction. Here, looking at the entire agreement, it is evident Subparagraph (a) of Paragraph 10 is written differently from the other subparagraphs in Paragraph 10. Subparagraph (a) is the only one that identifies a party other than the husband or wife to be liable for the expenses. Subparagraph (a) is the only paragraph that identifies specific debts to be paid, such as the $50,000 loan and the credit cards. Subparagraph (a) is the only paragraph that identifies a method of payment, i.e., monthly payments, by Salon & Spa Group. Finally, Subparagraph (a) is the only subparagraph that ends

7

with a provision that, in the event the company is sold or bankrupt, each party shall be solely responsible for the debt that is in their own name.

Construing Subparagraph (a) of Paragraph 10, the Court concludes the Debtor does not have personal liability to the Plaintiff to repay the $50,000 loan, or the American Express or Bank of America credit cards that are referenced therein. Plaintiff's arguments to the contrary are unavailing. Plaintiff argues that, because the Settlement Agreement is not signed by the corporation, it is unenforceable against the corporation. The Debtor points out the corporation in fact made the payments for several years, further indicating its understanding that it was responsible for the payments. In any event, the question before the Court is not whether the corporation can be held liable to the Plaintiff; the question is whether the Debtor can be held liable to the Plaintiff. A failure to hold the corporation liable does not translate automatically into liability for another party, here the Debtor.[1]

For these reasons, judgment is for the Debtor that he has no personal liability for the expenses identified in Subparagraph (a) of Paragraph 10 of the Settlement Agreement and thus the question of dischargeability does not arise.

Next, the Plaintiff contends the Debtor did not make the proper disclosure in the Settlement Agreement regarding the amount of his IRA. The Settlement Agreement recites a balance in the IRA of approximately $13,000 while the Debtor's bankruptcy schedules recite a value of the IRAs of $221,000. Plaintiff contends the Debtor was not truthful; the Debtor contends he accurately gave the cash balance, drawing a distinction between the balance in the account versus the value of an account.

---

[1] At the trial, the parties raised the issue of whether the Debtor was liable for certain credit card debts the Plaintiff contended were expenses of PERC, a company addressed in Subparagraph (e) of Paragraph 10 of the Settlement Agreement. The Court held the evidence open for 30 days for the parties to decide whether to proceed with this allegation. On May 3, 2017, Plaintiff requested a hearing on this issue.

At the hearing, the Court asked the Plaintiff to identify the claim that was being made with respect to the IRAs. To the extent the Plaintiff was seeking to assert a claim for fraud, the allegations in the Complaint are insufficient to support a finding of fraud. Moreover, the deadline to file an objection to the dischargeability of a claim arising from fraud expired on August 5, 2016, and the Plaintiff never sought such a determination. Thus, the Plaintiff is barred from alleging that she has a claim for fraud against the Debtor which is non-dischargeable.

What the Plaintiff really seems to want is permission to return to the state court to seek to set aside the judgment and the Settlement Agreement. The Court notes that, since the filing of the Motion for Relief from Stay, the Debtor received a discharge on November 1, 2016. Therefore, pursuant to 11 U.S.C. § 362(c)(2), the automatic stay has already terminated. That provision states that the stay of any act, other than an act against property of the estate, continues until the earliest of the time the case is closed, the case is dismissed, or, if the case is one under Chapter 7, the time a discharge is granted. Plaintiff is free to proceed in state court with respect to the issue of whether the state court judgment should be set aside. If the Debtor contends the state court proceedings encroach upon or impair his discharge or violate the discharge injunction, this Order is without prejudice to the Debtor returning to this Court to make such arguments.

## CONCLUSION

It is therefore ORDERED that the Settlement Agreement is the type of agreement referenced in 11 U.S.C. § 523(a)(5) and (a)(15) such that obligations arising under the Settlement Agreement could be non-dischargeable under those sections. The Court makes no finding as to any specific obligations under the Settlement Agreement other than the Debtor's alleged obligation under section 10(a) of the Settlement Agreement. As to those obligations, judgment is

for the Debtor. It is also ORDRED that the automatic stay is no longer in place due to the Debtor's discharge.

### ### END OF ORDER ###

**DISTRIBUTION LIST**

Kari Haldorson
464 Greystone Trace
Marietta, GA 30068

David J. Casey, Esq.
PO Box 813102
Smyrna, GA 30081

Randle Mort Conklin
705 Town Blvd NE
Atlanta, GA 30319

Edward F. Danowitz
Danowitz Legal, P.C.
300 Galleria Pkwy NW, Ste 960
Atlanta, GA 30339